IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEVEN DUARTE and MONIQUE DUARTE, individually and as husband and wife,<br><br>           Plaintiffs,<br><br>v.<br><br>CITY OF NAMPA and NAMPA POLICE DEPARTMENT,<br><br>           Defendants. | Case No. CV 06-480-S-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Defendants' Motion to Compel Production of Documents Pursuant to FRCP 45 Subpoena (Docket No. 18), filed March 12, 2007; and Defendant Nampa Police Department's Motion for Sanctions Against Plaintiffs Pursuant to FRCP 11 (Docket No. 20), filed March 15, 2007. For the following reasons, both motions will be denied

**I.
Background**

On November 29, 2006, Mr. & Mrs. Duarte ("Plaintiffs") filed their Complaint (Docket No. 1) naming as Defendants the City of Nampa ("the City") and the Nampa Police Department

Memorandum Decision and Order - Page 1

("NPD") (collectively, "Defendants").  Plaintiffs alleged various causes of action including: violations of the ADA and Idaho Human Rights Act ("IHRA"), wrongful discharge, intentional and negligent infliction of emotional distress, negligent training, libel and slander, and loss of consortium.

Mr. Duarte ("Plaintiff") began working for the NPD on or about April 6, 1998 and was later promoted to the Special Investigations Unit.  On June 24, 2004, Plaintiff suffered an anxiety attack during work and was hospitalized as a result.

In accordance with the Rules of the Peace Officers Standards and Training Council, Plaintiff received an evaluation from a licensed psychiatrist, Dr. Montgomery, to determine whether he was fit to return to work.  Dr. Montgomery reported that Plaintiff was able to return to work, but the NPD wanted additional information and requested that Dr. Montgomery complete a "Return to Work Record."

On September 16, 2004, the Defendant offered Plaintiff a position in dispatch, which he declined.  Plaintiff then accepted an assignment to work on "light-duty" for a period of thirty days.  However, on October 4, 2004, Plaintiff was placed on administrative leave for violation of light-duty protocol by carrying a gun.  Subsequently, the parties came to an agreement, set forth in a Memorandum of Understanding, which provided that Plaintiff would return to work on October 20th and complete the light-duty assignment.  At that time, Plaintiff also agreed to receive a fitness for duty evaluation, which was conducted by Dr. Morgan on October 22, 2004.

As a result of this evaluation, Dr. Morgan reported that Plaintiff was not able to resume his duties as a law enforcement officer.  Plaintiff's doctor, Dr. Montgomery, again advised the NPD, by way of letter dated October 27, 2004, that Plaintiff was able to resume work.  Despite

**Memorandum Decision and Order - Page 2**

Dr. Montgomery's recommendation, Plaintiff was terminated effective on November 30, 2004.

On March 13, 2007, this Court issued a decision dismissing the Nampa Police Department as a party in this case. The Court found that the NPD was a not a proper defendant as it was an administrative department of the City of Nampa and not an unincorporated association as defined by Fed. R. Civ. P. 17(b). (Docket No. 19.)

## II.
## Defendants' Motion to Compel

On January 12, 2005, Plaintiff Steven Duarte filed a Charge of Discrimination against the NPD with the Idaho Human Rights Commission ("IHRC"). After determining that there was probable cause for a finding of discrimination, the IHRC attempted a conciliation between Plaintiff and the City of Nampa. A mediation was scheduled with John Lynn acting as mediator for November 16, 2006. The IHRC communicated to Defendants' counsel that it would not be acting as a neutral party in the mediation. Subsequently, a second Charge of Discrimination was filed by Plaintiff and the mediation was cancelled.

In November 2006, Defendants made a public records request for the entire file maintained by the IHRC in its investigation into the charges made by Plaintiff. Jo-Ann Bowen, Deputy Attorney General for the State of Idaho, acting for and on behalf of the IHRC, sent approximately 277 pages of documents in response to this request. However, Ms. Bowen informed Defendants' counsel that she was denying their request as to certain documents, specifically one set of documents containing attorney-client privileged material and another set of documents that contained two pages of handwritten notes and 31 pages of email correspondence between the IHRC and Plaintiff's attorney during the conciliation efforts. Ms. Bowen stated she was withholding these records based on Idaho Rules of Evidence 408 and 507.

**Memorandum Decision and Order - Page 3**

On or about November 20, 2006, the IHRC administratively dismissed both of Plaintiff's Charges of Discrimination at his request.  On November 29, 2006, Plaintiffs filed this action before this Court.

On February 27, 2007, Defendants' counsel contacted Ms. Bowen and asked for the release of the two pages of handwritten notes and 31 pages of email correspondence because the IHRC had dismissed Plaintiff's case.  Ms. Bowen responded that the administrative dismissal of Plaintiff's complaints did not change the IHRC's position that these documents were privileged.

On March 1, 2007, the City of Nampa had a federal subpoena served upon Ms. Bowen, pursuant to Fed. R. Civ. P. 45, directing her to release these documents.  Six days later, Ms. Bowen sent a written objection to the production of these documents based on Idaho Rules of Evidence 408 and 507, as well as Fed. R. Civ. P. 26(b)(1).

Defendants argue that I.R.E. 408[1] is inapplicable because it is an admissibility rule, not a discovery rule and Defendants only seek to discover this information, not admit it as evidence. *See Rates Tech., Inc. v. Cablevision Systems Corp.*, 2006 WL 3050879, at *3 (E.D.N.Y. 2006) (finding that Rule 408 is irrelevant in the question of discovery, as it governs admissibility, not

---

[1] I.R.E. 408 provides:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. Compromise negotiations encompass mediation.

discoverability of evidence.)  Defendants also assert that I.R.E. 507[2] is inapplicable because the IHRC was not the mediator but a party to the mediation.  Also, the IHRC was not a "neutral" party in the mediation process since it was advocating on behalf of the Plaintiff.

Defendants also argue that in regards to Fed. R. Civ. P. 26(b)(1), it is unclear whether a non-party can object on relevance grounds.  *See Laborers Pension Trust Fund-Detroit and Vicinity v. CRS Poured Concrete*, 2006 WL 3804912, at *5 (E.D. Mich. 2006).  Additionally, Defendants submit that these documents could be relevant to litigation, as they concern the facts and allegations that led to the initial complaint.  Lastly, Defendants note that I.C. § 9-340(B)(8)[3] of the Idaho Public Records Act is inapplicable because they are not requesting the documents pursuant to a public records request, but rather pursuant to a federal subpoena and there is no requirement to show public interest where Defendants were parties to the IHRC investigations and seek documents as a party to a judicial proceeding relating to the complaint of discrimination.

In its opposition to Defendants' Motion to Compel, the IHRC almost wholly abandons its

---

[2]  I.R.E. 507(2) provides:

> A client has a privilege in any civil or criminal action to which the client is a party to refuse to disclose and to prevent any other person from disclosing confidential communications made in the furtherance of the rendition of mediation services to the client, among the client, the client's mediator, and persons who are participating in the mediation under the direction of the mediator, including members of the client's family.

[3]  This section exempts from disclosure under the Idaho Public Records Act "[r]ecords including, but not limited to, investigative reports resulting from investigations conducted into complaints of discrimination made to the Idaho human rights commission unless public interest in allowing inspection...outweighs the legitimate public or private interest in maintaining confidentiality of such records."  It also states: "The confidentiality of this subsection will no longer apply to any record used in any judicial proceeding brought by a named party to the complaint or investigation, or by the Idaho human rights commission, relating to the complaint of discrimination."  I.C. § 9-340B(8).

**Memorandum Decision and Order - Page 5**

initial reasons for objecting to disclosure.  Instead, the IHRC claims the "official information" privilege as its basis for not turning over the requested documents.  The IHRC contends that federal common law recognizes a qualified privilege for official information and if the potential disadvantages of disclosing the information are greater than the potential benefits of disclosure, discovery will be barred.  *See Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1991).

       The IHRC contends that disclosure of these documents would be contrary to public interest because the IHRC's conciliation efforts are very significant in the scheme of anti-discrimination law which requires open and candid communication with the alleged victim.  Disclosure of such documents would have a chilling effect on communications between the IHRC and victims, and an adverse effect on the process as a whole.  *See* I.C. § 67-5907(4) (the IHRC "shall endeavor to eliminate such discrimination by informal means such as conference, conciliation and persuasion.")  The IHRC cites to case law which has deemed that the Equal Employment Opportunity Commission's (EEOC) conciliation materials to be confidential and privileged.  *See Branch v. Phillips Petroleum Co.*, 638 F.2d 873 (5th Cir. 1981) (noting that purely factual information was subject to disclosure but conciliation materials were not).  The IHRC then notes that state law demonstrates there is public interest in nondisclosure of these documents.  *See* I.C. § 67-5907(4) (which states, in pertinent part: "No offer or counter offer of conciliation nor the terms of any conciliation agreement may be made public without the written consent of all the parties to the proceeding, nor used as evidence in any subsequent proceeding, civil or criminal").  The IHRC also points to the balancing test from I.C. § 9-340B(8).  *See supra*, note 3.  The IHRC lastly points out that Defendants have not stated a legitimate benefit that would come from disclosure of these documents.

**Memorandum Decision and Order - Page 6**

Plaintiffs, in their opposition, rely heavily on 42 U.S.C. § 2000e-5(b),[4] I.C. § 67-5907(4) and IDAPA 45.01.01.300.33[5] for the contention that communications during conciliation are privileged. Plaintiffs cite to cases discussing the chilling effect that discovery of conciliation efforts would have on the conciliation process, in that it would destroy openness and informality. *See Branch v. Phillips Petroleum Co.*, 638 F.2d 873 (5th Cir. 1981). Plaintiffs also contend that the matters Defendants seek are outside the permissible scope of discovery because they are not relevant but privileged material that are not a fact of consequence to the determination of this action.

In responding to these new arguments raised by the IHRC and Plaintiffs, Defendants first argue that the IHRC should be estopped from raising arguments not raised in its objection to the subpoena. The Defendants further contend that the official information privilege has no application to the documents that Defendants seek. They submit that the cases that the IHRC and Plaintiffs cite to for the "official information privilege" are actually relying on 42 U.S.C. § 2000e-5(b) for the basis of the privilege. *See Branch v. Phillips Petroleum Co.*, 638 F.2d 873 (5th Cir. 1981); *Haykel v. G.F.L. Furniture Leasing Co.*, 76 F.R.D. 386 (N.D. Ga. 1976). Defendants contend that 42 U.S.C. § 2000e-5(b) is inapplicable because it applies to the EEOC, not the IHRC, which has its own, more limited, privilege. *See* I.C. § 67-5907(4). Defendants

---

[4] 42 U.S.C. § 2000e-5(b) states: "Nothing said or done during and as a part of such informal endeavors [such as conference, conciliation and persuasion] may be made public by the [EEOC], its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned."

[5] IDAPA 45.01.01.300.33 states:

> In order to protect the interests of all parties in reaching successful settlements of discrimination charges without resorting to court action, the [IHRC] and its employees will not reveal information about a case to nonparties except as may be necessary to conduct a full and fair investigation or to cooperate with other government law enforcement agencies.

**Memorandum Decision and Order - Page 7**

maintain that the EEOC procedures and law do not apply to the IHRC.  The Title VII privilege applies to anything said or done during conciliation whereas the IHRA privilege only applies to offer, counteroffers and terms of any agreement.  *See* 42 U.S.C. § 2000e-5(b) and I.C. § 67-5907(4).  Defendants argue that as the Idaho Legislature adopted its statute after the federal statute was enacted, it could have easily adopted the more expansive language used in Title VII but chose not to.  *See Stout v. Key Training Corp.*, 2007 WL 1062981 (Idaho 2007).   As I.C. § 67-5907(4) applies only to offers, counteroffers and terms of agreements, and there were no offers or agreements made during the IHRC investigation, Defendants assert there is no protection afforded by that statute.

     Next, Defendants assert that the Idaho Public Records Act provides for disclosure as it states "confidentiality...will no longer apply to any record used in any judicial proceeding brought by a named party to the complaint or investigation...relating to the complaint of discrimination."  I.C. § 9-340B(8).  Defendants contend that this statute must be read along with I.C. § 67-5907(4) and cannot be read to exclude all matters of conciliation or the two statutes would be inconsistent.  They submit the more specific statute, I.C. § 67-5907(4), prevails.  *See Bolger v. Lance*, 137 Idaho 792, 796, 53 P.3d 1211, 1215 (2002) (a basic tenet of statutory construction is that a specific statute controls a more general statute).  Lastly, Defendants submit that IDAPA 45.01.01.300.33, which describes the duty of confidentiality on the part of IHRC employees, does not create a privilege under Fed. R. Civ. P. 26(b)(1).  *See Pearson v. Miller*, 211 F.3d 57 (3rd Cir. 2000) (a state statute declaring documents to be confidential does not mean they are privileged under Rule 26(b)(1)).

     The Court looks to all the law discussed above in making its decision.  The Court first

**Memorandum Decision and Order - Page 8**

looks at I.C. § 67-5907(4) which protects from public disclosure offers, counteroffers and the terms of any conciliation agreements. There is no Idaho case law which addresses this statute, making it unclear how narrow or broad it should be interpreted. At the very least, it evinces an intention by the Idaho Legislature to safeguard the conciliation process. By including this section, the Idaho Legislature was recognizing the importance of the conciliation process and the need to ensure nondisclosure to the public.[6] Although this statute may not explicitly protect the documents at issue, the Court finds it to set forth a policy that recognizes the important and sensitive nature of the conciliation process as a whole and the need to protect such process from unnecessary disclosure.

Additionally, I.C. § 9-203(5) would protect these communications from disclosure. I.C. § 9-203(5) states a public officer "cannot be examined as to communications made to him in official confidence, when the public interests would suffer by disclosure." There are significant public interests in nondisclosure of the communications between the IHRC and a party, or a party's counsel, during the conciliation process. Conciliation plays an important role in the IHRC's process of addressing complaints of discrimination. For conciliation to function at its best, communications must be open and candid. Disclosing these communications could have a chilling effect on future conciliation communications and lead to a deterioration of the entire process.

The IHRC relies on the federal common law privilege known as the "official information" privilege. *See Branch v. Phillips Petroleum Co.*, 638 F.2d 873 (5th Cir. 1981) (discussing the common law form of the official information privilege). This privilege requires a

---

[6] I.C. § 9-340B(8) also demonstrates the policy of the state to keep IHRC matters from being disclosed to the public. However, as this statute is part of the Idaho Public Records Act, it is not on point for this case.

**Memorandum Decision and Order - Page 9**

weighing of the potential benefits against the potential disadvantages of disclosure.  *Sanchez v. City of Santa Ana*, 936 F.3d 1027, 1033-34 (9th Cir. 1991).  The potential benefits of disclosure here are not very significant as the documents sought do not seem to be relevant to the issues in this case.  The potential disadvantages, on the other hand, are extremely significant.  As discussed above, disclosure of conciliation communications between the IHRC and plaintiff's counsel could have a detrimental effect on all future conciliations conducted by the IHRC.  Conciliation plays a vital role in the IHRC's resolution of discrimination complaints and requires candid and open communication in order to be most effective.  Although these type of communications may not arise to the "deliberative process" of government that this privilege is intended to protect, it is worth noting that the potential disadvantages more than outweigh the potential benefits of disclosure.

Lastly, there is the federal statute referenced by Plaintiffs and the IHRC, 42 U.S.C. § 2000e-5(b).  This statute protects anything said or done during conciliation endeavors from public disclosure.  Although this statute is only binding on the EEOC, the Idaho Supreme Court has stated courts can look to federal law for guidance in interpreting the IHRA.  *See* I.C. § 67-5901; *O'Dell v. Basabe*, 119 Idaho 796, 811, 810 P.2d 1082, 1097 (1991).  This statute is further evidence of a policy against disclosure of conciliation matters in order to promote the "unlitigated resolution of employment discrimination claims."  *See Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 880 (5th Cir. 1981).

Given the above, the Court will deny Defendants' Motion to Compel.  The Court finds that there is a strong policy evidenced in Idaho statutory law, federal statutory law and federal common law that weighs against the disclosure of the communications between the IHRC and

**Memorandum Decision and Order - Page 10**

Plaintiff's counsel, especially where these documents do not have a bearing on the facts in the underlying causes of action. Disclosing these communications would have a potentially damaging impact on the conciliation process, a process which is vital to the IHRC's role in resolving employment discrimination claims.

## III.
## Defendant Nampa Police Department's Motion for Sanctions

When Plaintiffs filed this lawsuit, counsel for the Defendants requested Plaintiffs stipulate to dismiss the NPD as an improper party or to amend their complaint and remove it as a party. Defendants contended that the NPD did not have the capacity to sue or be sued. Plaintiffs declined to do and requested evidence to substantiate that the NPD could not be sued. Defendants then filed their Motion to Dismiss (Docket No. 6). This Court granted that Motion on March 13, 2007 (Docket No. 19) for the reason that NPD was an administrative department of the City and could not be sued. Following the Court's Memorandum Decision and Order, the NPD filed a Motion for Sanctions Pursuant to Fed. R. Civ. P. 11. (Docket No. 20).

The NPD contends that Rule 11 sanctions are appropriate when pleadings are without factual foundation. *See* Fed. R. Civ. P. 11(b)(3) (requiring all allegations and factual contentions in pleadings to have evidentiary support or be likely to have evidentiary support after a reasonable opportunity for further information or discovery); Fed. R. Civ. P. 11(b)(4) (requiring denials of factual contentions to be warranted on the evidence). The NPD asserts that Plaintiffs had no factual or legal foundation for naming the NPD as a defendant and refusing to dismiss it because the NPD is an administrative department of the City and has no authority to sue or be sued. Because Plaintiffs' counsel refused to dismiss the NPD after this was explained to them and despite having all of the necessary information to make the determination that the NPD was

**Memorandum Decision and Order - Page 11**

in fact a department of the City, Defendants filed their Rule 12(b)(6) motion to dismiss in January 2007.  (*See* Exhibit B to the Affidavit of Bruce J. Castleton, Docket No. 20.)  The NPD argues that the only evidence Plaintiffs relied on in naming it as a defendant was the collective bargaining agreement between the Nampa Police Protective Association ("NPPA") and the City.  As Plaintiffs were given 21 days to voluntarily dismiss the NPD but did not do so, and the NPD subsequently succeeded in its motion to dismiss, the NPD contends it is entitled to sanctions.

In opposition, Plaintiffs contend that Rule 11 sanctions are not justified as they had a reasonable basis in law and fact to name the NPD as a defendant.  First, they submit that the NPD was named in Mr. Duarte's complaint filed with the IHRC which was never objected to and even Defendants' counsel referred to both the NPD and the City as separate clients.  Next, they point to other case filings in which the NPD was named as a defendant and apparently did not object to being named in the lawsuit.  *See Boren v. City of Nampa, Nampa City Police Department*, Case No. CV 04-0084-S-MHW.  Based on this, they thought it was reasonable to sue the NPD.

Additionally, Plaintiffs maintain that they requested evidence from Defendants' counsel, such as court rulings or city documents, that would demonstrate the NPD was an improper party and it never received any response to this request.   Plaintiffs also submit that there was no official act, such as a city resolution or ordinance, that designated the NPD as an administrative department of the City.  The only evidence was a Nampa Police contract which stated it evidenced the "rights and duties" between the City and NPD employees.  Plaintiffs contend this contract is consistent with Mr. Duarte's understanding that he was employed by the NPD which was independent from the City.  (Exhibit 1 to Affidavit of Counsel in Support of Plaintiffs'

**Memorandum Decision and Order - Page 12**

Memorandum in Opposition to Defendant Nampa Police Department's Motion to Dismiss, Docket No. 11-1.)  This contract also had a provision that stated the City would indemnify the NPD, and Plaintiffs submit this would be unnecessary if the City and the NPD are one and the same.  (*Id*.)  Plaintiffs also assert that the conclusory affidavits submitted by Defendants in their reply brief for the motion to dismiss further emphasize why Plaintiffs could not voluntarily dismiss the NPD without securing confirmation that the conduct of the NPD would be imputed to the City.  (*See* Defendant Nampa Police Department's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, Docket No. 13.)

       Plaintiffs assert that there is no Idaho law to confirm the NPD's contention that it was an administrative department that could not be sued.  Plaintiffs maintain that all of the cases NPD relied on in its motion to dismiss had dismissed departments pursuant to statutes that expressly held departments of cities could not be sued and Idaho has no such statute.

       To the extent that the NPD relies on Fed. R. Civ. P. 11(b)(4) for sanctions, Plaintiffs maintain that section is inapplicable here because it applies to answering defendants that deny a complaint's factual allegations.  Even if it did apply, Plaintiffs assert that there was more than a reasonable basis for their opposition to NPD's motion to dismiss.  Plaintiffs also contend that this Court's decision granting the motion to dismiss does not mean that they violated Rule 11 and that sanctions are warranted.  Plaintiffs submit that the Court's decision does not state they had no legal or factual foundation for naming the NPD as a party.  They point out that Rule 11 is intended to deter conduct that violates the Rule and not to punish parties who, in good faith, oppose a motion.  They also maintain that a determination on whether Rule 11 was violated should be determined from the time the complaint was filed, not from when the Court decided

the NPD was an improper defendant.

The NPD submits that Plaintiffs misstate the burden of Rule 11.  It contends the burden is on the Plaintiffs to verify the propriety of naming a defendant in a lawsuit, not for the defendant to adequately convince plaintiff to remove him as a party.  It maintains that standard is not satisfied here and that the absence of evidence that the NPD was an administrative department does not mean that it was an unincorporated association.  Lastly, the NPD argues that Plaintiffs' reliance on *Boren v. City of Nampa, et al.* is misplaced because in that case, the NPD and the City used a different legal strategy to dismiss the claims against them.

Fed. R. Civ. P. 11(b)(3) requires that all allegations and other factual contentions contained in writings presented to a court "have evidentiary support...or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."  This Rule also provides for sanctions if violated.  Rule 11(c) states that if a court determines a violation of Rule 11 has occurred, "the court may, subject to [certain conditions], impose an appropriate sanction upon the attorneys, law firms, or parties that have violated [the Rule] or are responsible for the violation."  Sanctions are limited to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(2).  Sanctions may include "directives of a nonmonetary nature, or order to pay a penalty to the court," or, if initiated by a motion, "an order directing payment....of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."  *Id*.

An attorney has a duty prior to filing a complaint to conduct a reasonable factual investigation and also to perform adequate legal research to confirm whether the underpinnings of the complaint are warranted by existing law or good faith argument for modification of

**Memorandum Decision and Order - Page 14**

existing law.  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).

The Court does not find sanctions to be warranted in this case.  Although this Court ultimately determined that the NPD was not a proper defendant in the action, it does not find that Plaintiffs sued the NPD with absolutely *no* factual support.  First off, there was little documentation addressing what type of entity the NPD is.  Some confusion may have also developed as Plaintiff's IHRC charge of discrimination was against both the City and the NPD.  It was not until the complaint in this case was filed that Plaintiffs were informed that these two entities are one in the same.  Lastly, the lack of Idaho law on the issue undoubtedly left Plaintiffs without any guidance on the matter.  Naming the NPD was not an extreme oversight on Plaintiffs' part, rather it was justifiable given the facts and absence of law before them.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Defendants' Motion to Compel Pursuant to FRCP 45 (Docket No. 18), filed March 12, 2007, be **DENIED**;

2) Defendant Nampa Police Department's Motion for Sanctions Pursuant to FRCP 11 (Docket No. 20), filed March 15, 2007, be **DENIED**.

DATED: June 20, 2007

Honorable Mikel H. Williams
Chief United States Magistrate Judge